Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of CARMELA SPERDUTO, Respondent, for Compensation under the Workmen's Compensation Law for the Death of Her Husband, ANGELO SPERDUTO, *v.* NEW YORK CITY INTERBOROUGH RAILWAY COMPANY, Employer and Self-Insurer, Appellant.

Third Department, January 8, 1919.

Appeal — effect of affirmance by Court of Appeals upon one ground without considering another ground — effect of dismissal of appeal by Court of Appeals — Workmen's Compensation Law, section 27, as amended by chapter 705 of the Laws of 1917, construed — authority of State Industrial Commission to require self-insurer to commute award — constitutional law — mortality tables as evidence — effect of award of Commission unappealed from.

An affirmance by the Court of Appeals of a decision of the Appellate Division upon one of two grounds without considering the other ground does not destroy the effect of the decision of the Appellate Division with respect to the other ground.

A dismissal by the Court of Appeals of an appeal from a decision of the Appellate Division, made pursuant to a resolution of the State Industrial Commission asking the court to determine the application of the amendment of 1917 to section 27 of the Workmen's Compensation Law, upon the ground that the resolution presented no matter which the court could pass upon, left the Appellate Division free to consider the effect of said section as amended.

The State Industrial Commission may not under section 27 of the Workmen's Compensation Law, as amended by chapter 705 of the Laws of 1917, *arbitrarily*, without notice and hearing, and without any possible feeling of insecurity as to the payments to be made, adopt a resolution that every mutual association and every self-insurer shall on or before a certain date pay into the aggregate trust fund of the State Insurance Fund the present value as of that date of the installments of compensation under every award against such carrier for death claims arising from accidents occurring between certain dates.

Hence, an order made pursuant to such resolution requiring a self-insurer to pay in cash to the Commission the alleged present worth of weekly payments directed to be made by an award to a widow during widowhood and to minor children during dependency, should be reversed.

The construction of section 27, as amended, so as to permit the adoption of a resolution under the circumstances aforesaid would render the statute unconstitutional, as it would discriminate against certain employees and certain kinds of insurance.

The courts in construing a statute will endeavor to sustain its validity.

The clause in section 27, as amended, that the Commission may commute one or more awards by one or more resolutions, may be construed as meaning that the Commission may hold a hearing on notice, inquire into the facts as to an insurer which may have several awards against it upon facts similar in their nature, and that an investigation and a separate trial in each of such cases is not necessary.

Mortality tables from their public nature and general use are treated as some evidence, but are not absolutely conclusive.

An award of the State Industrial Commission unappealed from is a final determination of the rights of the parties.

If section 27 of the Workmen's Compensation Law, as amended, is confined to special and extraordinary cases where a hearing on notice shows that the interest of justice requires a commutation, it is valid.

Cochrane and H. T. Kellogg, JJ., dissented.

Appeal by the defendant, New York City Interborough Railway Company, from a decision and award of the State Industrial Commission dated the 28th day of June, 1918, requiring it to pay into the State fund the present value of the award to the widow and children of the deceased under section 27 of the Workmen's Compensation Law (Consol. Laws, chap.

67; Laws of 1914, chap. 41), as amended by chapter 705 of the Laws of 1917.

*Alfred T. Davison* [*Addison B. Scoville* and *E. Crosby Kindleberger* with him on the brief], for the appellant.

*Merton E. Lewis,* Attorney-General [*E. C. Aiken,* Deputy Attorney-General, of counsel], and *Robert W. Bonynge,* counsel for the Commission, for the respondents.

JOHN M. KELLOGG, P. J.:

This is an appeal from a determination of the State Industrial Commission, June 28, 1918, requiring the appellant, a self-insurer, to pay in cash to the Commission the alleged present worth of the weekly payments directed to be made by an award of March 14, 1918, to a widow during widowhood and to minor children during dependency. *Adams* v. *New York, O. & W. R. Co.* (175 App. Div. 714; 220 N. Y. 579) held that such a direction could not be made with reference to an award to a widow, but after the decision of that case section 27 of the Workmen's Compensation Law was amended by chapter 705 of the Laws of 1917, and the action of the Commission is based upon that amendment. We reversed the determination in the *Adams* case upon the ground that there was no legal basis upon which the Commission could determine when, if ever, the widow would remarry, and that sections 27 and 25 should be read together, and that the payment of a gross sum was only authorized in exceptional cases where the Commission found in its discretion that the interest of justice so required. The Court of Appeals affirmed our decision upon the first ground stated, without considering the second ground. Its decision did not destroy the effect of our decision in that respect. It was content to rest its decision upon the one ground.

In *Matter of the Adoption of a Resolution Requiring the Payment into the State Fund of the Present Value of Death Benefits Pursuant to the Provisions of Section 27 of the Workmen's Compensation Law, as Amended by Chapter 705 of the Laws of 1917* (181 App. Div. 962), the Commission asked this court to determine whether the amendment of 19

applied to awards made before its enactment, and we concluded it did.   The Court of Appeals (224 N. Y. 13) dismissed the appeal upon the ground that the resolution presented no matter which the court could pass upon.   We are, therefore, free to consider the effect of section 27, as amended, as applied to the facts in this case.

The Commission duly made an award of death benefits of four dollars and twenty-one cents per week to the widow, who was then about forty-one years of age, during widowhood, and one dollar and twenty-nine cents per week to each of the four children during dependency.   The awards to the children, under the act, terminated respectively when they became eighteen years of age.   Upon the remarriage of the widow she receives, under the act, two years' compensation in one sum. The award to each child was ten per cent of the weekly wage, and upon the death of the widow, any surviving child was thereafter to receive fifteen per cent instead of ten per cent. The Commission has not changed the award, and it stands as its final judgment, and the mandate of the statute, as to the amount which the appellant must pay, and which the widow and children shall receive.

May 21, 1918, the Commission adopted a resolution that every mutual association and every self-insurer shall on or before July 31, 1918, " pay into the aggregate trust fund of the State Insurance Fund the present value as of that date of the future installments of compensation under every award against such carrier for death claims arising from accidents occurring between July 1, 1917, and December 31, 1917, both inclusive, together with the necessary expense loading thereon," and further provided the manner in which the computation should be made.   On June 28, 1918, pursuant to that resolution, the Commission directed the appellant to pay into the State Insurance Fund $5,456.11, which it determined was the net present value of the future installments, together with loading for administration expenses four per cent ($218.24), making the total, $5,674.35.

The employer had duly qualified as a self-insurer, and no question was raised as to its ability to meet its obligations as such.   No findings of fact and conclusions of law were filed as required by section 23 of the act.   There was no hearing or

inquiry as to the facts, upon notice, and the defendant did not have a day in court. The determination appealed from, therefore, must rest solely upon the resolution, as the arbitrary act of the Commission, based upon no fact with reference to this case except that the defendant is a self-insurer. It is evident that the determination singles out the self-insurer and the mutual insurance association, and arbitrarily requires them to pay a gross sum, while no such requirement is made of the stock companies or the State Insurance Fund. The terms of the section permit the commutation of all death benefits and other compensation for a period of 104 weeks or more; the resolution applies only to death claims for accidents occurring between July 1, 1917, and December 31, 1917. In cases of total permanent disability section 15 allows to the injured employee two-thirds of the weekly wages for life, which may equal or be greater than the weekly payments to a widow, and may continue for many years. It is difficult to understand why the self-insurer and the mutual association were not required to commute the payments for such an injured employee.

These considerations make it clear that the resolution was not based on any possible feeling of insecurity as to the payments to be made by the self-insurer and the mutual association.

If the Commission may make such discrimination, the question still remains whether it may act arbitrarily, or whether its discretion must be moved by some fact in the particular case, as we held in the *Adams* case. Also whether the determination is not an illegal interference with the defendant's property rights.

The amendment to section 27, made in 1917, it is claimed avoids the effect of the decision in the *Adams* case. It provides: " Depositing future payments. If an award under this chapter requires payment of death benefits or other compensation by an insurance carrier or employer in periodical payments, the Commission may, in its discretion, at any time, any provision of this chapter to the contrary notwithstanding, compute and permit or require to be paid into the State fund an amount equal to the present value of all unpaid death benefits or other compensation in cases in which awards are made for total permanent or permanent partial disability

for a period of one hundred and four weeks or more, for which liability exists, together with such additional sum as the Commission may deem necessary for a proportionate payment of expenses of administering the fund so created." The moneys so paid constitute an aggregate and indivisible fund; the employer is to be discharged from further liability, and this fund is to be kept separate from other moneys of the State Fund and the State Fund is not liable for any losses or charges against such special fund. The section also provides: " All computations made by the Commission shall be upon the basis of the survivorship annuitants' table of mortality, the remarriage tables of the Dutch Royal Insurance Institution and interest at three and one-half per centum per annum."

The Commission has exercised very extraordinary powers, which entirely change, in the case of the self-insurer and the mutual insurer, the plan of payment fixed by the Legislature in compensation cases. The theory of the law is that the business, in an easy way, by periodical payments, must bear the losses sustained by the employee or his dependents, and that the losses shall be paid in substantially the manner in which the wages were paid, but that the Commission may, in a given case, commute the payments to one or more lump sums in its discretion and in the " interest of justice." The Commission has proceeded upon the theory that the Legislature has substantially given it the power to reverse section 25 and arbitrarily to make new laws in certain cases — a power which the Legislature has not the authority to give.

If the Commission has correctly construed section 27, it is clearly unconstitutional. But the courts will hesitate in construing a statute in a way which makes it unconstitutional, and will go to the limit of construction in sustaining it. Every reasonable intendment is in favor of its validity. There is nothing in the section which permits the Commission to make an omnibus order like the one in question, discriminating against certain employees and certain kinds of insurance. The clause in the section that the Commission may commute one or more awards by one or more resolutions, may be construed as meaning that the Commission may hold a hearing on notice, inquire into the facts as to an insurer which may have several awards against it, upon facts similar in their

nature, and that an investigation and a separate trial in each of such cases is not necessary. It may have other proper construction, but it was not intended to permit the Commission arbitrarily to change the Workmen's Compensation Law and commute awards without notice and without hearing, based solely on the kind of insurance accepted.

By section 50 of the act the employer may furnish one of three kinds of insurance: (1) Subdivision 1 provides for insurance in the State Fund; (2) subdivision 2 for insurance in a stock company or mutual association authorized by law to transact such business, or (3) subdivision 3 by the employer qualifying, with the approval of the Commission, as a self-insurer. The Commission has the right to revoke the consent at any time for cause shown. It seems idle for the statute to provide for three kinds of insurance unless each insurer is to stand in the same position, with equal liability and responsibility. The payments under the act are to be the same without regard to the kind of insurance furnished. If an extra burden is placed upon the self-insurer and the mutual association, solely because they are such, it is an illegal discrimination and without effect. When United States four and one-quarter per cent bonds are selling at a discount; when the best railroad companies in the country cannot borrow money at six per cent and, as a favor and in the interest of the public, the government is advancing necessary money to them at six per cent, there can be no question but that computing the value of the award on a basis of three and one-half per cent interest, and requiring cash payment within a few days, is a heavy burden. Weekly payments of a small amount are not a serious burden upon a self-insurer, but the requirement that the present value of all future payments shall be made in cash at once would be ruinous. Laying aside all other considerations, if a sum is payable each week by a business to a woman during her widowhood, it is a grievous burden to compel it to pay the present value of such payments at once in cash. A government, a bank, insurance company, corporation or individual cannot ordinarily pay at once the cash present value of all its obligations payable in the future. Credit is the life of business. The extent of the burden cast upon the appellant as a self-insurer by the determination

is not the only consideration; an important fact is that it is required to liquidate its liability in a manner different from that required of other employers and insurers, and such requirement is based solely upon the fact of self-insurance.

If the Commission may be justified, in any case, in casting such a burden upon an employer, there must be facts and circumstances in the case, and shown in the findings, which move and compel its discretion in that respect. Its action cannot be arbitrary. It is said that such commutation makes the employee more secure. The same may be said of insurance in a stock company. But it is not entirely clear that the employee is made more secure. That is a question which the future alone can determine. Disaster may overtake the special fund, unwise investments may be made, and the section expressly provides that losses in this fund shall not be made up from the State Fund, so that if there is a deficiency in this fund the employee must suffer. If, for any reason, the determination or the section should be held invalid as to the employee, then the insurer might be liable under the original award, thus exacting double compensation. It is urged that subdivision 3 of section 50, as amended in 1917, provides that the Commission may require an agreement upon the part of the employer to pay any awards commuted under section 27 of the act into the special fund of the State Fund, as a condition of self-insurance. That does not mean that the employer must observe every arbitrary and illegal act of the Commission, but only its lawful acts. The appellant, upon filing the securities and proofs required by the Commission, qualified and was accepted as à self-insurer, June 27, 1914. The Commission did not require, and then had no power to require, such an agreement.

Many times it is necessary for the court to determine the probable duration of a life, and it refers to the mortality tables to enable it, with or without other evidence, to determine the question. Such tables, from their public nature and general use, are treated as some evidence, but are not absolutely conclusive. The court may take into consideration any other facts proper to be considered. There are exceptional cases where, by long usage, the courts use certain well-known tables to determine approximately the value of life and other

interests. The use of such tables for compulsory adjustment are substantially limited to cases where the court is called upon to marshal assets, or distribute funds in court, which have been brought there in regular course, and the adjustment is a mere incident to the distribution or division. The Code of Civil Procedure and the General Rules of Practice provide that where funds are paid into court to be invested for the benefit of a life tenant, a tenant by the curtesy or in dower, the investment shall be at the expense of such person, but if he is willing to take a gross sum, it may be computed by the use of the mortality tables, with an interest basis of five percentum. (Rule 70; Code Civ. Proc. §§ 1569, 1617, 2717.) In marshalling the assets of insolvent insurance companies, and in like cases, the courts, in distributing them, compute contingent interests upon the basis of mortality tables. But these are cases where the moneys are actually in the court and the distribution is made necessary by that fact. I know of no case where the court can compel a life tenant, or person entitled to receive an annuity, to receive, or the remainderman to pay, a gross sum in lieu of the life estate, unless such payment is necessary in order to marshal and distribute funds already in court. It cannot compel funds to be brought into court solely for the purpose of the liquidating of future contingent payments.

In dealing with the individual the State is not all powerful. There are still certain limitations upon its right to interfere with the individual and his property. A person who is competent to do business, and who meets his obligations and does not violate the law, cannot be deprived of his property against his will except under the authority given by the State Constitution to condemn real property for public use. If he has the life use of certain money, the State, under ordinary circumstances, cannot compel him to take a gross sum in lieu of it, or if he is required to pay a certain sum to an individual during the life of that individual, the State cannot compel him to anticipate the payment by a gross sum. The rights of parties as fixed by contract and by judgment should stand. If the payment of money depends upon the life or remarriage of a widow, the payor has the benefit of the chance that she may die or remarry at an early

date and relieve him of the other payments, and any act of the State which deprives him of that benefit and gives it to the State or another is an invasion of his legal rights. The award of the Commission, unappealed from, is a final determination of the rights of the parties. The Commission, without being called to action by any particular fact, arbitrarily determines that the assumed present value of this class of awards must be paid into the special fund, and that the appellant shall not have the benefit which may come from the death or remarriage, but that such benefit shall inure to the special fund. There is no good reason manifest why such order should have been made. If the State concludes that it is unwise to permit an employer to qualify as a self-insurer, the act should be amended. The Commission should not amend it indirectly by its arbitrary discrimination against such insurers. The State or its Commission cannot speculate in the lives or marriage of individuals, or deal in contingencies. If there were a just doubt about the ability of the appellant to meet future payments, additional security may be required at any time. If the amount of the present value of the awards were to be deposited in the fund as security, with the right to the insurer to receive the equitable part of the fund released from time to time by the children dying, arriving at eighteen years of age or ceasing to be dependent, or the widow remarrying or dying, the objections to the statute as it is construed by the Commission would be less forcible. But the commutation made is not for the benefit of the employer or the employee, but for the benefit of the State Fund administered by the Commission.

The appellant is not only required to pay the value of the future payments, but is required to pay four per cent in addition for the purpose of administering the fund. We know of no case where a remainderman is compelled to pay the full value of the life estate and an addition of four per cent for the handling of the fund. Rule 70 of the General Rules of Practice provides that the life tenant must pay the expense of handling the fund paid into the public treasury for his benefit.

There is no certainty that any widow will remarry. It depends upon so many different and obscure circumstances that a guess can hardly be hazarded. The age, personal

appearance, attractiveness, means, acquaintances, opportunity, the personal wishes of the woman, her health, and so many other considerations enter into the question that there is no substantial basis for a judgment in a particular case whether or not she will remarry. We infer from section 27 that the Dutch Royal Insurance Institution is willing to take chances and wager upon the remarriage of a widow. There is a general understanding that, for a proper consideration, certain companies are willing to wager against any contingency. These are not insurances against an event which must happen, and the time of its happening is the only uncertain question, but are pure gambles whether or not certain things will or will not happen. On the question of remarriage of widows, appellant is solely interested in this particular widow, and it has bound itself to pay to her a certain sum during her widowhood. The continuance of the payments depends upon this widow, and not upon a certain average which may be arrived at as to widows in general. It is a mere guess as to whether this widow will remarry, or when she will remarry, if such an event happens. Here the Commission not only has assumed to fix the value of the future payments to the widow, but also of the payments to each of the children, based upon a probable death under eighteen years of age and continued dependency. It must have calculated when the lump sum representing two years' payments will be paid to the widow if she remarries, and when, if ever, the interest of any of the children will be increased one-half. If the statute is confined to special and extraordinary cases where a hearing on notice shows that the interest of justice requires a commutation, we are not condemning it. We are only holding that its proper construction cannot justify the resolution or the order in question.

Certain computations, based upon the payments to be made to the widow, show: The payments during widowhood on a three and one-half per cent interest basis with an allowance of two years' pay upon remarriage would give a value of $3,536.18; upon a five per cent interest basis of $3,009.54, and upon a six per cent interest basis of $2,694.29. If the payments to the widow are to be during her natural life, the commutation on the basis of three and one-half per cent would be $3,928.56; on a five per cent interest basis it would

be $3,263.86, and on a six per cent interest basis, $2,924.88. These figures demonstrate that the interest of justice did not require the commutation in question and that an unreasonable and unjust burden has been cast upon the appellant. I favor reversal.

All concurred, except Cochrane and H. T. Kellogg, JJ., dissenting.

Determination reversed.