In the Matter of the Claim of BONIFICIO PETTINELLI, Respondent, against DEGNON CONTRACTING COMPANY, Appellant.

STATE INDUSTRIAL BOARD, Respondent.

Third Department, September 8, 1926.

Workmen's compensation — employee suffered injury resulting in dementia præcox and is confined to asylum — State Industrial Board ordered commutation under Workmen's Compensation Law, § 27, and payment into State Fund — said section, as amended by Laws of 1922, chap. 615, is applicable though accident occurred in 1916 — error to determine life expectancy of claimant on basis of normal life.

The claimant suffered an injury in 1916 which resulted in *dementia præcox* and he is confined in an asylum where he has been since 1917. The State Industrial Board directed that compensation be commuted under section 27 of the Workmen's Compensation Law and be paid into the State Fund. This section, as amended by chapter 615 of the Laws of 1922, is applicable although the injury occurred in 1916.

It was error, however, for the State Industrial Board to determine the amount to be paid into the State Fund on the basis of the life expectancy of a normal person, but it should have taken into consideration the fact that the claimant is insane, and that under the testimony, his period of expectancy is not that of a normal person.

APPEAL by the Degnon Contracting Company from a decision and an award of the State Industrial Board, made on the 3d day of August, 1925.

*William Warren Dimmick,* for the appellant.

*Albert Ottinger, Attorney-General* [*E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondent State Industrial Board.

H. T. Kellogg, J. On October 12, 1916, the claimant, while in the course of his employment, sustained an accidental injury. He was struck on the head by a falling rock. As a result his mind became deranged. He was committed to an asylum for the insane on September 14, 1917. He was then suffering from *dementia præcox.* Compensation was paid to him from October 12, 1916, to March 14, 1923. On April 12, 1924, the State Industrial Board made an award of compensation covering the period from March 14, 1923, to March 19, 1924. The award was affirmed in this court. (211 App. Div. 829.) Compensation continued to be paid by the employer until August 10, 1925. On February 10, 1926, the Industrial Board, after hearings duly had, determined that the claimant was totally and permanently disabled. It further determined that the present value of all future payments of compensation, together with a proportionate amount of the administrative expenses for administering the fund, was $13,662.55; that all future payments of compensation in the interest of justice be commuted; that the sum named, less $4,775.72, already placed in the custody of the Industrial Commission by the employer, be paid into the aggregate trust fund, on account of the employer for the claimant in this case; that upon making such payments the employer be discharged from further liability. At the time when the decision requiring a deposit of commuted future payments was made the employer, a self-insurer, had gone out of the contracting business in which it had been previously engaged. It was for this reason that the deposit was ordered to be made.

Section 27 of the Workmen's Compensation Law reads in part as follows: "If an award under this chapter requires payment of death benefits or other compensation by an insurance carrier or employer in periodical payments, the Board may, in its discretion, at any time, any provision of this chapter to the contrary notwithstanding, compute and permit or require to be paid into the State fund an amount equal to the present value of all unpaid death benefits or other compensation in cases in which awards are made for total permanent or permanent partial disability for a period of one hundred and four weeks or more, for which liability exists, together with such additional sum as the Board may deem necessary for a proportionate payment of expenses of administering the fund so created. The moneys so paid in for all death benefits or other compensation to constitute one aggregate and indivisible fund; and thereupon such employer or insurance carrier shall be discharged from any further liability under such award and payment of the same as provided by this chapter shall be assumed by the special fund so created. All computations made by the

Board shall be upon the basis of the survivorship annuitants table of mortality, the remarriage tables of the Dutch Royal Insurance Institution and interest at three and one-half per centum per annum." It also provides: " Such special fund shall be kept separate and apart from all other moneys of the State fund, and shall not be liable for any losses or expenses of administration of the State fund other than the expenses involved in the administration of such special fund, nor shall the State fund be charged with the losses or expenses of the aggregate special fund beyond the amount of such special fund." The section was amended to read as above by chapter 615 of the Laws of 1922. Its provisions applied to the commutation made in 1926, although the accident occurred in 1916. (*Sperduto* v. *N. Y. City Interborough R. Co.*, 186 App. Div. 145, 147.)

The commutation in this case was made in accordance with the testimony of an actuary who employed the Danish survivorship annuitants tables of mortality in making his calculations. He stated that they were the best tables now in use; that the Carlisle tables are based upon the mortality in a certain municipality and are a population experience or census proposition, whereas the Danish tables are based upon the experience among people supported by annuities. He was asked: " These figures here were based on the life of a normal man, is that right? " To which he replied: " A normal annuitant." Again, he was asked: " That means a normal person? " To which he replied: " More than that, a normal annuitant means a normal person receiving an annuity." He did not take into account that the claimant was an abnormal person suffering from *dementia præcox*. The superintendent of the asylum in which the claimant was confined testified that the average length of life of a *dementia præcox* patient was sixteen years from the date of his admission to a hospital for the insane; that he considered that sixteen years from such time was a fair and reasonable estimate of the life expectancy of the claimant. As the claimant was admitted to a hospital for the insane in September, 1917, his expectancy at the time of the order of commutation, according to experience among *dementia præcox* patients was less than eight years. We are not told what his expectancy under the Danish tables might have been for the proof was excluded by the presiding commissioner. We may take judicial notice, however, that it was far greater than eight years. The question to be determined is whether or not the facts of the case justified the commutation made.

It will be noted that under the quoted provisions of section 27 the moneys paid in " for all death benefits or other compensation "

are to constitute " one aggregate and indivisible fund; " that " such special fund shall be kept separate and apart from all other moneys of the State fund; " that the special fund " shall not be liable for any losses or expenses of administration of the State fund other than the expenses involved in administration of such special fund; " that upon the payments being made the employer and insurance carrier are " discharged from any further liability " and payment is " assumed by the special fund so created." The amount paid in in a given case, therefore, does not go directly to satisfy the claim of the employee in such case. Neither does it become security for the particular claim involved and no other. On the contrary, the sums ordered paid in upon all outstanding claims become a single fund for the security of all such claims. Thus, if an individual claimant lives longer than his expectancy of life, as shown by the tables upon the basis of which his award was commuted, the exhaustion of the sum paid in upon his claim does not involve a cessation of his periodic payments. On the other hand, if he lives for a less term than his expectancy, the moneys remaining, in excess of the periodic payments which have been made, are not returned to the employer and carrier. They continue as a part of the fund to secure the payment of other outstanding claims. The chances that lives may in some cases prove longer or in others shorter than as shown by the tables are equalized in the single fund which stands security for all claims whether they prove to be long or short. It is apparent, however, that the system might be oppressively administered. " All computations made by the Board shall be upon the basis of the survivorship annuitants table of mortality." The Board has no discretion, if it commutes at all, except to commute on the basis of such tables. Assume that a claimant, enjoying a periodic award, for reasons other than his original injury, is about to die; that the tables show an expectancy of twenty years; that it is obvious that he will not live more than one day. In such a case, a commutation on the basis of the tables would result in the payment of a large sum by the employer which in the end would be devoted, not to the satisfaction of a claim against it, but to the payment of awards against other employers for accidents occurring in other employments. Such a result would be unjust and oppressive. It would manifestly constitute a taking of property arbitrarily and without due process The Industrial Board is not compelled to commute. It " may, in its discretion," commute. In the assumed case we would say that the ordering of commutation would constitute an abuse of discretion and should not be permitted to stand. We think that the situation in the case at bar is comparable to that in the assumed case. This

claimant, under the expert proof given, will not live more than eight years. Yet the award in his favor has been commuted on a basis of a life expectancy which is perhaps more than double that number of years. We think that the Industrial Board did not properly exercise its discretion herein and that the award should not be permitted to stand.

The award should be reversed and the claim remitted.

All concur.

Award reversed and claim remitted, with costs against the State Industrial Board to abide the event.